UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YURISLANDY CASTRO MARQUEZ,<br><br>                    Petitioner,<br><br>        v.<br><br>MARKWAYNE MULLIN, et al.,<br><br>                    Respondents. | Case No. 5:26-cv-02156-PD<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**A# 233-341-873** |

Yurislandy Castro Marquez ("Petitioner") filed a counseled Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking release from Respondents' custody at the Adelanto ICE Processing Center in Adelanto, California.  The Court has considered the Petition and Respondents' answer. Petitioner did not file a reply.

**I.    Background**

On January 9, 2023, the Department of Homeland Security ("DHS") announced a new parole process for Cuban nationals to obtain advanced authorization "to travel to the United States and be considered for a discretionary grant of parole, on a case-by-case basis".  Implementation of a

Parole Process for Cubans, 88 FR 1266-02, 1268.  Under this process, a grant of parole was for a temporary period of up to two years and would "enable individuals to seek humanitarian relief or other immigration benefits, including adjustment of status pursuant to the Cuban Adjustment Act, Public Law 89-732, 80 Stat. 1161 (1966) (8 U.S.C. 1255 note), for which they may be eligible, and to work and contribute to the United States." *Id.*  Parole was granted pursuant to 8 U.S.C. § 1182(d)(5)(A) "on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *Id.* at 1272. Separately, Cuban nationals who were paroled after one year were then eligible to apply for an adjustment of status under the Cuban Adjustment Act. *See Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 56 (D.D.C. 2025) ("[T]he Cuban Adjustment Act (CAA), . . . has long permitted Cuban nationals who were admitted or paroled into the United States to become lawful permanent residents after being here for more than a year.").

On November 10, 2023, Petitioner, a Cuban citizen, arrived in the United States at Miami International Airport and was admitted under the Cuban Humanitarian Parole program for a period ending June 12, 2025. Petition ¶ 2; Dkt. No. 1-1.  In December 2024, Petitioner filed an I-485, Adjustment of Status with U.S. Citizenship and Immigration Services ("USCIS"), which is currently pending.  Petition ¶ 4.

On March 25, 2025, following an executive order, DHS announced that the Cuban Parole Process, and similar programs for other countries, were being terminated.  Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans ("Termination Notice"), 90 FR 13611-01.[1]

---

[1] Following this announcement, a district court "certif[ied] a class of individuals paroled under the programs and stay[ed] the Termination Notice insofar as it revoked their previously granted parole." *Doe v. Noem*, 152 F.4th 272, 278 (1st Cir. 2025).  The First Circuit vacated the district court order and remanded, finding that "Plaintiffs ha[d] not demonstrated a strong likelihood of success in showing that

2

On June 12, 2025, Petitioner's parole expired. On November 29, 2025, Petitioner was arrested and charged with Armed Trespass with a firearm in violation of Florida Statute § 810.09(2)(b). *Id.* ¶ 5. The Arrest Report states that on November 29, 2025, local deputies were notified of armed subjects trespassing on private property.

> [D]eputies were also notified and given the location where the subjects were most likely to leave the property. [The property] is fenced and cultivated as well as cattle company land. The subjects were noted to be armed per a provided picture showing firearms. Charlotte County Sheriff Deputies were able to see the subjects through agency issued drone showing the subjects concealed on [the] Property. The deputies then made contact with the subjects on [the] Property. The subjects were detained. Three firearms were recovered by [fish and wildlife] K9, where the subjects attempted to hide the firearms on [the] Property.

Dkt. No. 1-3 at 2. Petitioner was one of the four individuals arrested. *Id.* On December 22, 2025, Petitioner pleaded guilty to a violation of Florida Statute § 810.08, trespass in structure or conveyance, a misdemeanor, and sentenced to 30 days in county jail. *See* Dkt. No. 1-4 at 1.

On December 24, 2025, ICE arrested Petitioner in Lehigh Acres, Florida, after he was released from local police custody. Petition ¶ 7. Petitioner was initially detained in Florida, and then transferred to Adelanto, where he remains detained. *Id.*

On January 7, 2026, Petitioner requested bond, but the Immigration Court took no action because he had been transferred to California without prior notice to Petitioner or his counsel. Petition ¶ 9. The Order of the Immigration Judge ("IJ") in the Miami Krome Immigration Court dated January 13, 2026 regarding Petitioner's requested custody redetermination states, "no action." Dkt. No. 1-6.

---

under the statute, the [DHS] Secretary must terminate these grants of parole under the [parole] program[s] on an individual basis." *Id.* at 285.

3

On January 13, 2026, at Adelanto, the DHS issued a Notice to Appear charging Petitioner with removability pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I). *See* Dkt. No. 1-5. The Notice to Appear stated that Petitioner's parole had expired on June 12, 2025. *Id.* As noted above, in December 2024, Petitioner filed an I-485 Adjustment of Status, which is currently pending.

## II. Discussion

Petitioner seeks immediate release and an order enjoining Respondents from re-detaining him unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden by clear and convincing evidence. Petition at 15.

The Petition raises two claims: (1) Petitioner's detention violates substantive due process under the Fifth Amendment because he is not a flight risk or danger; and (2) his detention violates procedural due process because he was detained without a pre-deprivation hearing. *Id.* at 11–14.

Respondents argue that Petitioner's humanitarian parole had already expired before he was arrested and convicted, which constituted a material change in circumstance which provided a valid basis for detention. Respondents assert Petitioner will be eligible for a *Rodriguez*[2] bond hearing once he remains detained for 180 days.

### A. Detention and Request for Bond Hearing

Petitioner's humanitarian parole was pursuant to 8 U.S.C. § 1182(d)(5)(A). That section provides that such parole "shall not be regarded as an admission of the [noncitizen] and when the purposes of such parole

---

[2] At a *Rodriguez* bond hearing, which is required in the Central District of California, the government must show at six-month intervals that continued detention pending removal proceedings is justified by clear and convincing evidence. *See Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015).

4

shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* At the time that ICE detained Petitioner, his parole had expired. However, Respondents did not detain Petitioner because his parole expired; his detention was based on his misdemeanor trespass arrest and conviction. Neither party identifies the statute under which Petitioner is currently detained.

Petitioner requested a bond hearing while he was in ICE detention in Florida, but by the time the hearing was scheduled, Respondents had moved him to Adelanto. It thus appears that DHS believed Petitioner was entitled to a bond hearing after he was detained.[3] However, Petitioner does not state that he requested or received a bond hearing once transferred to Adelanto.

## B.    Procedural Due Process

Courts in this District have found that re-detention, without notice or a pre-deprivation hearing, of a non-citizen who had been released on conditions shortly after their entry into the United States and had complied fully with those conditions, violated procedural due process. *See Cruz v. Lyons, et al.*, No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129 (C.D. Cal. Nov. 6, 2025) (granting temporary restraining order releasing noncitizen who had been paroled into the United States and was re-arrested at appointment with

---

[3] Neither party argues that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), including as amended by the Laken Riley Act. Neither does it appear that Petitioner's conviction for trespass would qualify. *See* 8 U.S.C. § 1226(c)(1)(E)(ii) ("The Attorney General shall take into custody any alien who-- is inadmissible . . .; and is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person . . . .").

USCIS); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026) (granting petition for noncitizen who had been paroled in the United States and was re-arrested at ICE check-in).  *See also M.V.F. v. Santacruz*, No. 2:25-cv-11700-MEMF-E, 2025 WL 3691419, at *5 (C.D. Cal. Dec. 19, 2025) (granting TRO ordering release of noncitizen who had been released on their own recognizance shortly after entering the United States and was re-arrested at ICE check-in).

As in these cases, the Court considers Petitioner's procedural due process claim under the three-part test established in *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976).  The *Matthews* test balances three factors:

> First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

### 1.   Private Interest

Petitioner has a private interest in remaining out of custody.  Petitioner has resided in the United States for two years, between being paroled on November 10, 2023, and being arrested by ICE on December 24, 2025.

While Petitioner has remained subject to supervision during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases).  Petitioner's release

included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). This conditional liberty is "'valuable and must be seen as within the protection of the Fourteenth Amendment.'" *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

### 2. Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, Petitioner argues the risk of erroneous deprivation is high where he has received no procedural protections. Petition at 13. The Court agrees. The risk of an erroneous deprivation of a petitioner's liberty interest is considerable where he has not received any bond or custody redetermination. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (risk of erroneous deprivation is considerable for petitioner previously released on bond after it was determined he was not a danger to the community or a flight risk).

However, in evaluating this risk, courts that have ordered release and a pre-deprivation hearing have considered the petitioner's compliance with all release conditions and criminal history. *See e.g., Calderon v. Kaiser*, No. 25-CV-06695-AMO, 2025 WL 2430609 at *2 (N.D. Cal. Aug. 22, 2025) (noting that petitioner who was released on her own recognizance did not violate the conditions of her release which included reporting for any hearing or interview); *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) ("Petitioner has no criminal history and indicates that he has attended every check-in and court hearing since he arrived in the United States."); *De Vasquez v. Chestnut*, No. 1:25-CV-1999-JDP, 2026 WL 25539 at *4 (E.D. Cal. Jan. 5, 2026) (noting that since release, "there has been no indication that [petitioner] has become a flight risk or danger to the community").

Petitioner argues he is not a flight risk or danger to the community because his crime of conviction, simple trespass, contains no element requiring intent to commit a crime or malicious intent.  He was convicted of a violation under Florida Statute § 810.08, a misdemeanor, which states:

> Whoever, without being authorized, licensed, or invited, willfully enters or remains in any structure or conveyance, or, having been authorized, licensed, or invited, is warned by the owner or lessee of the premises, or by a person authorized by the owner or lessee, to depart and refuses to do so, commits the offense of trespass in a structure or conveyance.

Fl. St. § 810.08(1).  Petitioner sustained this conviction in December 2025. The misdemeanor conviction is a changed circumstance from November 2023, when immigration authorities admitted Petitioner into the United States on parole.  In determining whether to detain Petitioner, immigration authorities could take this changed circumstance into account.  Accordingly, the risk of erroneous deprivation of liberty is lessened by the changed circumstance.

### 3.    Government Interest

The government has a strong interest in preventing noncitizens from remaining in the United States in violation of the law.  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022).  Petitioner's argument that there is nothing in Petitioner's record to suggest he would abscond or endanger the community before a bond hearing could be carried out ignores the circumstances surrounding his conviction.

Considering the *Matthews* factors, Petitioner has not shown he was entitled to a pre-deprivation hearing prior to being detained by ICE and should be released.  Petitioner also does not request a bond hearing in this Petition.  However, according to Respondents' answer, once he remains detained for 180 days, Petitioner will be eligible to request a *Rodriguez* bond hearing where the government bears the burden of establishing he is a flight risk or a danger to the community by clear and convincing evidence.  Dkt. No.

13 at 3.[4]  After weighing the *Matthews* factors, the Court concludes that due process requires that Petitioner receive a *Rodriguez* bond hearing.  Therefore, Claim Two under procedural due process is granted on that basis.

### C.    Substantive Due Process

Petitioner also argues that because he is not a flight risk or danger, his detention bears no reasonable relation to any legitimate purpose.  Petition at 11.  However, as explained above, Petitioner fails to demonstrate that there were no changed circumstances to warrant his re-detention, or that a pre-deprivation hearing was required in this case.  He also fails to show that the government has no legitimate purpose in re-detaining him, given his criminal history.  Accordingly, this claim is denied.

## III.    Order

The Petition is granted as to Claim Two and the remaining claim is dismissed without prejudice.

Respondents are ORDERED to release Petitioner Yurislandy Castro Marquez (A# 233-341-873), unless he receives an individualized bond hearing no later than **June 30, 2026**, at which the government bears the burden of proof by clear and convincing evidence that Petitioner is a flight risk or a danger to the community.

The government is further ordered to file a status report by **July 6, 2026**, stating whether and when Petitioner received a bond hearing or was released.

DATE: June 22, 2026

*Patricia Donahue*

_____

Patricia Donahue
United States Magistrate Judge

---

[4] *See Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015).

9